IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONI A. KREIS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | No. 2:17-CV-1633-JAM-DMC<br><br><br>FINDINGS AND RECOMMENDATIONS |

       Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pending before the court are the parties' brief on the merits (Docs. 14, 19, and 20).

       The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

1

v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the court recommends the matter be remanded for further proceedings.

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).   The sequential evaluation proceeds as follows:

Step 1    Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

Step 2    If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;

Step 3    If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted;

Step 4    If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied;

2

| | | |
|---|---|---|
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

///
///
///
///
///
///
///

3

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on August 15, 2013. See CAR 19.[1] In the application, plaintiff claims disability began on January 1, 2002. See id. In his brief, plaintiff alleges disability due to "attention deficit disorder, Asperger's syndrome, autism, depression, learning disability, anxiety." Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on January 25, 2016, before Administrative Law Judge (ALJ) Daniel G. Heely. In a March 28, 2016, decision, the ALJ concluded plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): borderline intellectual functioning, affective disorder, and anxiety disorder;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: full range of work at all exertional levels; the claimant is limited to simple repetitive tasks; limited to occasional public contact; and must have a job that requires only simple English;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 21-26.

After the Appeals Council declined review on June 12, 2017, this appeal followed.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

---

[1] Citations are the to the Certified Administrative Record (CAR) lodged on January 10, 2018 (Doc. 10).

# III. DISCUSSION

In his opening brief, plaintiff argues: (1) the ALJ failed to properly evaluate the medical opinion of examining physician, Dr. Kalman, and improperly relied on outdated opinions from non-examining doctors as well as the opinion of examining physician, Dr. Richwerger, who plaintiff states did not conduct a complete evaluation; (2) the ALJ failed to properly assess lay witness evidence from plaintiff's mother and grandmother; and (3) the ALJ erred in evaluating plaintiff's credibility. Plaintiff also argues the ALJ's vocational finding is flawed due to these errors.

### A. Medical Opinions

#### 1. The ALJ's Analysis

At Step 4 of the sequential process, the ALJ evaluated the medical opinion evidence to determine plaintiff's residual functional capacity. See CAR 24-25. The ALJ largely relied on the opinions provided by the agency reviewing physicians, Drs. Bongiovani and Brode. See id. The ALJ also accepted the opinion of examining physician, Dr. Richwerger. See id. at 25. The ALJ rejected the opinion of examining physician, Dr. Kalman. See id.

As to these opinions, the ALJ stated:

> Maryanne Bongiovani, Ph.D., and Tawnya Brode, Psy.D., State agency medical consultants, reviewed the claimant's medical record and found the claimant has an organic mental disorder. The doctors opined that the claimant has mild limitations with regard to his activities of daily living, mild limitations in maintaining social functioning, and moderate limitations in maintaining concentration, persistence, or pace. The doctors found no episodes of decompensation (Exhibits 1A6-7 and 3A6). Reduced weight is accorded to the mild restrictions in the claimant's activities and social functioning. However, the rest of the opinions of the State agency doctors are given great weight. The limitations noted by the doctors are well supported with specific references to medical evidence. The opinions are internally consistent as well as consistent with the evidence as a whole, especially with regard to his full sale IQ of 75.
>
> David C. Richwerger, Ed.D., s State agency consultative examiner, stated the claimant has moderate impairments in performing detailed and complex tasks. The doctor also noted mild limitations in performing work activities on a consistent basis. The undersigned accords great weight to this opinion because the medical evidence sustains it and because this doctor is well-versed in the assessment of functionality as it pertains to the disability provisions of the Social Security Act and Regulations. This opinion is consistent with the fact that the claimant's full scale IQ was noted to be 75.

Les Kalman, M.D., a State agency consultative examiner, stated that the claimant has extreme limitations in carrying out detailed instructions and tasks. The doctor identified marked limitations in understanding and remembering detailed instructions or tasks; or completing a normal workday; interacting appropriately with the general public or customers; traveling in unfamiliar places or using public transportation; and setting goals or making plans independently of others (Exhibit 20F). Little weight is accorded to Dr. Kalman's opinion because it is not consistent with the medical evidence. For example, in 2015, the claimant denied having depression, anger, and violent thoughts. Based on this, Dr. Kalman's opinion appears to overstate the claimant's limitations.

CAR 24-25.

2. Plaintiff's Contentions

Regarding Dr. Kalman, plaintiff argues:

. . . The ALJ merely asserted that Dr. Kalman's opinion is entitled to only little weight because allegedly "it is not consistent with the medical evidence. For example, in 2015, the claimant denied having depression, anger and violent thoughts." (Tr. 25). As an initial matter, the sweeping claim that the opinions provided with regard to Mr. Kreis's functional limitations are "not consistent with the medical evidence" is itself far too generic to constitute a "specific," let alone a legitimate reason for rejection.
Moreover, the specific ground described by the ALJ is deeply flawed on multiple levels. Far from forming a sufficient basis for rejecting the examiner's opinion, it actually reveals the ALJ's erroneous failure to consider that record evidence indicates Mr. Kreis habitually *minimizes* his symptoms. On February 18, 2014, for instance, prior to the record cited by the ALJ, a psychoeducational re-evaluation found that "[h]is behavior was consistent with previous interactions with this Examiner in that Toni tended to indicate that everything was going well even when the available data suggested otherwise." (Tr. 418). "He tended to respond to the items in a positive manner, resulting in scores that suggest he is functioning adequately. However, this is in contrast to his grades, attendance, and overall school performance which paint the picture that he is not functioning successfully." *Id.* This is consistent with Dr. Kalman's finding that Mr. Kreis's insight was poor. (Tr. 495).
And in any event, that on a single occasion Mr. Kreis denied having depression, anger and violent thoughts – even assuming the denial was entirely accurate – is a single snapshot failing to indicate how well he was functioning over time. Mental illness by nature waxes and wanes. *See, e.g., Punzio v. Astrue*, 630 F.3d 704, 710-11 (7th Cir. 2011) (finding that the ALJ demonstrated a fundamental misunderstanding of the episodic nature of mental illness). Further, the crucial inquiry in Social Security cases is not whether a claimant might theoretically obtain a job, but whether he can sustain work on a full-time, ongoing basis. *See, e.g., Watson v. Barnhart*, 288 F.3d 212, 218 (5th Cir. 2002) (noting courts have focused not simply on whether an individual can obtain a job, but whether it could be maintained, indicating "'[a] condition that does not allow a person to work on a regular basis precludes substantial gainful activity"); Social Security Ruling 96-8p, 1996 WL 374184 (S.S.A. 1996) (RFC assessment is to focus on "the individual's

6

ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis"). Therefore, it was erroneous as a matter of law for the ALJ to concentrate on an isolated occasion of waning as though it represented Mr. Kreis's condition over time.

Even beyond this, had the ALJ properly reviewed the record as a whole, as he was required to do, he would have realized that the record documents that Mr. Kreis exhibited significant signs and symptoms on examination. Ironically, the ALJ cited a lack of violent thoughts during one visit although this actually followed Mr. Kreis's assault on his grandfather the month earlier. *See* (Tr. 487). In the previous visit in July 2015, he was making verbal threats of a "violent nature when angry." (Tr. 484). Nor does the very visit on which the ALJ relies document an absence of concerning symptoms, as the ALJ suggests.

Despite experiencing a relatively unusual period of improvement, Mr. Kreis remained paranoid and believed that people were watching him. (Tr. 490). On mental status examination, his appearance was guarded; he had a constricted affect, no spontaneous speech, moderate anxiety, paranoid thought content, and perceptual distortions present of people watching. (Tr. 489). He was assessed a GAF score of 49. *Id.* (footnote omitted). At other times, Mr. Kreis was generally even more symptomatic, as described above, and ultimately was unable to complete his schooling even with accommodations.

Evidence preceding the period directly at issue also corroborates Mr. Kreis's serious problems. For instance, testing in November 2007 revealed that Mr. Kreis was functioning at just the 1st percentile in short-term memory and the 2nd percentile in processing speed. (Tr. 363). He attended special education classes and did not do well even within that accommodating environment. *See, e.g.,* (Tr. 212) (must be prompted many times to focus), (Tr. 226) ("struggles with beginning a task"; "needs to be directly prompted to start assignments"; "needs to be redirected several times while working on a task"; and "is easily distracted by what is going on around him").

Contrary to the ALJ's terse assertion, Dr. Kalman's opinions are actually quite consistent with the evidence of record as a whole. Even had the ALJ attempted to explain otherwise, it is doubtful that he could have justified his rejection of essentially all of the physician's opinions. And certainly the ALJ did not properly reject the opinions based on the erroneous rationale provided.

As to Dr. Richwerger, plaintiff contends:

> . . . The ALJ gave great weight to David Richwerger, Ed.D., a consultative examiner who performed IQ testing. (Tr. 25). However, while Dr. Richwerger tested Mr. Kreis's cognitive abilities and obtained an IQ score of just 75 (Tr. 396), he did not perform a thorough psychiatric evaluation as did Dr. Kalman. And in contrast to Dr. Kalman's access to the evidence of record, Dr. Richwerger only had one medical record to review. (Tr. 393). The regulations provide that the "extent to which an acceptable medical source is familiar with the other information in your case record" is a relevant factor to be considered in determining the weight to which a medical opinion is entitled. *See* 20 C.F.R. § 416.927(d)(6).

///

Rather than recognizing this, the ALJ generically asserted that Dr. Richwerger's opinion was entitled to great weight "because the medical evidence substantiates it" and since the consultant was aware of disability law. (Tr. 25). In light of the actual evidence of record, to which Dr. Richwerger was not even privy, it is perhaps not surprising that the ALJ failed to explain how the evidence actually "substantiates" anything or how Dr. Richwerger was in any way more well-versed in assessing claimants in accordance with disability law than Dr. Kalman. The ALJ's attribution of great weight to Dr. Richwerger's opinion as though it were a comprehensive assessment is also internally inconsistent, as the source only diagnosed borderline intellectual functioning (Tr. 397) whereas even the ALJ found the additional severe impairments of affective disorder and anxiety disorder. (Tr. 21).

Finally, as to the agency reviewing non-examining doctors, plaintiff argues:

> Another error is revealed by the ALJ's attribution of great weight to most of the deficient, outdated opinions of the State agency nonexaminers. (Tr. 24). The limited evidence available to these sources did not include the thorough evaluation reported by Dr. Kalman, and even the ALJ apparently realized how incredible the nonexaminer's denial of whether Mr. Kreis has any "social interaction limitations" was. (Tr. 24, 70, 81). The opinion of a nonexaminer that is itself deficient and cannot provide support for an ALJ's decision. *See, e.g., Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 357 (3d Cir. 2008) (holding that the opinion of the non-examining psychologist should not have been accepted since his "assessment appears to be unjustified based on the record, as he made errors in logic similar to that made by the ALJ"); *Coleman v. Astrue*, Case No. 07-CV-1722-JM (JMA), 2009 WL 861864, at *9 (S.D. Cal Mar. 26, 2009) (remanding after determining that "the RFC assigned to Plaintiff by the ALJ is not supported by substantial evidence as it is based upon the conclusions of . . . one of the MEs, whose opinion did not incorporate all of Plaintiff's objective medical evidence").
> The reviewers' assessments herein were deficient, and the ALJ's general assertion that they are "consistent with the evidence as a whole, especially with regard to his full scale IQ of 75" (Tr. 24) cannot be sustained. The ALJ made no attempt to explain how the few limitations identified were "especially" consistent with an IQ of 75 or were somehow sufficient to account for Mr. Kreis's affective disorder or pervasive anxiety/paranoia documented throughout the record. *Id.*

3. <u>Applicable Legal Standards</u>

"The ALJ must consider all medical opinion evidence." <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). The ALJ errs by not explicitly rejecting a medical opinion. <u>See</u> <u>Garrison v. Colvin</u>, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another. <u>See</u> <u>id.</u>

///

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources. 20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). Social workers are not considered an acceptable medical source. See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010). Nurse practitioners and physician assistants also are not acceptable medical sources. See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016). Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so. See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

### 4. Disposition

The ALJ gave the opinions of the agency consultative non-examining doctors "great weight," except the ALJ gave "reduced weight" to these doctors' opinion plaintiff has mild restrictions in activities of daily living and social functioning. See CAR 24. Instead, the ALJ concluded the evidence supported moderate difficulties in these areas. See id. at 21. While plaintiff argues the ALJ erred in rejecting these doctors' opinion in this regard in favor of greater limitations than opined, plaintiff has not identified how the ALJ erred in making a more favorable finding. To the extent plaintiff contends the ALJ erred by relying on opinions expressed by these doctors because the opinions are not supported by the record, the court does not agree. Specifically, the consultative reviewing doctors' opinions are consistent with those offered by Dr. Richwerger.

Dr. Richwerger examined plaintiff and prepared a report on December 26, 2013. See id. at 392-498 (Exhibit 7F). Dr. Richwerger administered the following tests: a complete psychological evaluation, the Wechsler Adult Intelligence Scale-IV (WAIS-IV), and the Wechsler Memory Scale-IV (WMS-IV). See id. at 392. The ALJ gave "great weight" to all of Dr. Richwerger's opinion. See id. at 25. According to plaintiff, the ALJ erred in relying on Dr.

Richwerger's opinions because they were not based on a complete evaluation. Specifically, plaintiff contends "Dr. Richwerger only had one medical record to review." The court finds no error because Dr. Richwerger's objective findings on examination provide sufficient factual bases for his opinions, upon which the ALJ was thus entitled to rely. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (concluding "examining physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant").

Dr. Kalman examined plaintiff on December 11, 2015, and submitted a report. See CAR 494-502 (Exhibit 20F). The ALJ gave "little weight" to all of Dr. Kalman's opinions. See CAR 25. According to the ALJ, Dr. Kalman's opinions are not consistent with the medical evidence. See id. By way of example, the ALJ notes plaintiff denied depression, anger, or violent thoughts. See id. The court agrees with plaintiff this analysis is insufficient. First, plaintiff's subjective statements regarding depression, anger, and violent thoughts do not constitute objective "medical evidence." Second, the ALJ failed to indicate how any specific opinion expressed by Dr. Kalman is inconsistent with the medical evidence. As with much of the ALJ's analysis in this case, discussed further below, the ALJ's consideration of Dr. Kalman's opinions is conclusory.

While Dr. Kalman's report does not outline extensive functional limitations, it does describe limitations which would seem to present significant obstacles to plaintiff's ability to work. On objective examination, Dr. Kalman noted plaintiff's intelligence was "below average." Id. at 495. Plaintiff did not know proverbs. See id. His insight into his mental illness was poor. See id. The doctor noted plaintiff's affect was blunted and his mood depressed. See id. at 496. Dr. Kalman stated plaintiff's "thought was vague with brief responses." Id. Though the doctor did not note auditory or visual hallucinations, Dr. Kalman stated plaintiff was "[p]ositive for delusions of 'people watching me.'" Id. As for functional capacity, Dr. Kalman opined plaintiff is unable to manage his own transportation. See id.

The matter should be remanded to allow further consideration of the Dr. Kalman's findings and opinions, particularly those with respect to below-average intelligence, delusions, and inability to manage transportation.

11

**B.     Credibility**

1.     The ALJ's Analysis

At Step 4, the ALJ evaluated the credibility of plaintiff's statements and testimony to determine his residual functional capacity. See CAR 22-24. In this case, the ALJ's credibility analysis is limited. The ALJ noted plaintiff ". . .alleges that the following conditions limit his ability to work: ADD, Asperger's syndrome, autism, depression, learning disability, and anxiety." Id. at 23. The ALJ then found "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." Id. at 24. The ALJ added

> There is evidence that the claimant has not been entirely compliant in taking prescribed medications, which suggests that the symptoms may not have been as limiting as the claimant has alleged in connection with this application. The claimant stopped taking his Wellbutrin medication because he did not like it (Exhibit 14F3).

Id.

The ALJ also concluded plaintiff's statements and testimony were not consistent with the medical opinions. See CAR 24.

2.     Plaintiff's Contentions

Plaintiff argues:

> Here, the ALJ claimed that Mr. Kreis's statements were only partially credible because "[t]here is evidence that the claimant has not been entirely compliant in taking prescribed medications, which suggests that the symptoms may not have been as limiting as the claimant has alleged in connection with this application. The claimant stopped taking his Wellbutrin medication because he did not like it[.]" (Tr. 24). This rationale is woefully deficient, not only for its narrow scope but for its failure even to consider the degree to which it is directly undermined by the evidence of record.
> The ALJ suggests that Mr. Kreis overstates his symptoms. As noted above, however, the ALJ failed to consider that record evidence indicates Mr. Kreis, who is mentally impaired, habitually understates his symptoms and attempts to make himself appear more functional than he is. *See, e.g.,* (Tr. 418) (psychoeducational re-evaluation noting that "[h]is behavior was consistent with previous interactions with this Examiner in that Toni tended to indicate that everything was going well even when the available data suggested otherwise"; pointing out that "[h]e tended to

respond to the items in a positive manner, resulting in scores that suggest he is functioning adequately" when in reality it is apparent "that he is not functioning successfully").

Mr. Kreis's poor insight, which was also noted by such sources as Dr. Kalman (Tr. 495), thus could serve as a basis for discounting his statements suggesting high functioning, but not for discounting his complaints of troublesome symptoms. To the contrary, an admissions of problems by someone who tends to minimize symptoms must as a matter of common sense be viewed in a different light. The ALJ's total failure to consider this undermines his assumption that not always taking drugs as prescribed indicates symptoms less severe than described.

Moreover, the ALJ's assertion that "claimant stopped taking his Wellbutrin medication because he did not like it" (Tr. 24) is a gross oversimplification that fails to reveal due consideration of the medication's side effects, as required. Here, for example, a disability report form dated September 7, 2014, notes nausea and dizziness were experienced as side effects of the drug (Tr. 322), while a pharmacy information sheet corroborates that these conditions are known side effects. (Tr. 401). Mr. Kreis also testified that he notices being "more tired in the day" due to his medication. (Tr. 50). It is an ALJ's responsibility to consider the evidence of side effects, and it is the ALJ's responsibility to supply reasoning should he determine this evidence is to be rejected. *See, e.g., Varney v. Secretary*, 846 F.2d 581, 585 (9th Cir. 1988) (ALJ may not disregard testimony about the side effects of medication unless the ALJ makes "specific findings similar to those required for excess pain testimony").

The ALJ's disdainful assumption that Mr. Kreis stopped taking the medication merely "because he did not like it" (Tr. 24) was plainly inadequate and only compounded the ALJ's failure to meaningfully consider Mr. Kreis's limited insight and documented tendency to understate his difficulties. Respectfully, as a primary purpose of the SSA's employing ALJs is to ensure a careful, thoughtful case review that takes account of precisely these sorts of circumstances, to affirm this ALJ's blind application of assumptions without regard to record evidence signaling the need for more meaningful consideration would be contrary to the aims of the system as well as to the principles embodied in judicial authority.

The ALJ's evaluation of Mr. Kreis's subjective complaints cannot properly be sustained. To the extent not remanded for an award of benefits, the ALJ should be instructed to engage in a proper assessment of these complaints.

3. <u>Applicable Legal Standards</u>

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See <u>Saelee v. Chater</u>, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See <u>Rashad v. Sullivan</u>, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible

13

and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

### 4. Disposition

The court agrees with plaintiff the ALJ's analysis is insufficient. The ALJ did not provide any summary of plaintiff's statements or testimony, nor did the ALJ provide any analysis of the objective evidence in the context of plaintiff's statements and testimony. While the ALJ noted some objective findings, see CAR 24, the ALJ does not explain how this evidence undermines plaintiff's credibility. Notably, the ALJ provided no analysis supporting non-compliance with medication. Moreover, the ALJ states plaintiff's allegations are not supported by the medical opinion evidence, see id., but the ALJ does not identify which of plaintiff's statements and/or testimony are undermined by the medical opinions.

It may very well be the ALJ's credibility finding is supported by the reasons outlined in defendant's brief. This court is limited, however, to reviewing the Commissioner's final decision as set forth by the ALJ, not as the Commissioner may have wished the ALJ set forth the decision. See Tackett, 180 F.3d at 1097. The court declines defendant's invitation to substitute its own judgment for the Commissioner's in this regard. The court finds the ALJ has failed to identify the testimony found to be not credible or identified the evidence undermining that testimony. See Lester, 81 F.3d at 834. The matter should be remanded for a complete credibility analysis.

### C. **Lay Witness Evidence**

### 1. The ALJ's Analysis

At Step 4, the ALJ also considered lay witness evidence from plaintiff's mother, grandmother, and step-father. See CAR 23. The ALJ stated:

> Jennifer Gamez, the claimant's mother, stated that he does not leave the house because his anxiety goes up around other people. Additionally, she noted that he cannot manage money or pay bills (Exhibit 11E). She also mentioned that he is unable to function on any task and he has no sense of life's responsibilities (Exhibit 16E). Mrs. Gamez also mentioned that he [sic] has trouble getting the claimant to go to his mental health appointments. She also noted that the claimant is forgetful (Exhibit 20E). Edward Gamez, the claimant's step-father, completed a Third Party Function Report. He stated the claimant cannot hold a conversation. He also cannot do anything or go anywhere according to Mr. Gamez. He also pointed out that the claimant has sleeping difficulties because of his anxiety. However, he also noted that the claimant is able to clean and mow the lawn (Exhibit 11E). In another statement, Mr. Gamez stated that

the claimant often forgets to do his chores (Exhibit 21E). Mary Gamez, the claimant's grandmother, stated that the claimant has a hard time focusing when it comes to following directions. She also mentioned that the claimant has trouble focusing and communicating with others (Exhibit 22E). The undersigned has considered these statements, but finds them unpersuasive as they are neither consistent with, nor supported by the overall evidence of record, as discussed below. Moreover, as close relatives of the claimant, their natural tendency to sympathize with the claimant and endorse his application for disability benefits cannot be ignored.

CAR 23.

2. Plaintiff's Contentions

As to the ALJ's analysis of lay evidence from plaintiff's mother and grandmother, plaintiff argues:

> These witnesses provided key evidence illustrating the effects of Mr. Kreis's impairments on his ability to function. Jennifer Gamez, Mr. Kreis's mother, completed a Function Report dated September 30, 2013 (Tr. 232-40) and also wrote a letter. (Tr. 344). She stressed that her son is unable to be around people, suffers from social anxiety and insomnia, and isolates in his room. (Tr. 232-34). She described her struggles with attempting to make him attend school and noted that "his thoughts and the things he would say became not normal, that people were watching him. He can't leave the house they are out there." (Tr. 344).
> It was continuing to be a fight to get him to leave the house, such as for mental health appointments, and his medications did not seem to be working. *Id.* The witness also described his difficulties with daily activities, constant forgetting of what he is doing, trouble following through and expression of seemingly random thoughts. (Tr. 345). Mr. Kreis's grandmother, Mary Gamez, observed that he "has a very hard time focusing when it comes to following directions" and communicating, and is usually withdrawn. (Tr. 347).
> The evidence provided by these witnesses is quite consistent with the record, which as described above documents Mr. Kreis's pervasive paranoia, difficulty attending school, and serious problems focusing. *See, e.g.*, (Tr. 260, 276, 469, 472, 480, 487, 490). Yet, the ALJ asserted that he considered the lay "statements, but finds them unpersuasive as they are neither consistent with, nor supported by the overall evidence of record" and that "[m]oreover, as close relatives of the claimant, their natural tendency to sympathize with the claimant and endorse his application for disability benefits cannot be ignored." (Tr. 23).
> As to the first stated basis, not only did the ALJ incorrectly assert the lay statements are inconsistent with the record, he ignored the specific documentation commenting on the consistency between the information provided by Mr. Kreis's mother and that from other observers. Indeed, the Lodi Area Special Education Region report from February 18, 2014, which notes that "weaknesses have always been documented in [Mr. Kreis's] processing speed, planning and attention, and retrieval of information from long-term memory" along with deficits in executive

16

functioning, lack of engagement or interaction with peers, and struggles to attend and complete work, also explicitly states that behavioral ratings suggested "the presence of deficits regarding behavioral regulation and metacognition at home" and the "[r]atings provided by Toni's current RSP teacher are consistent with those provided by his mother regarding deficits in cognitive self-management." (Tr. 260). Simply put, the ALJ did not reasonably dismiss the lay evidence as somehow inconsistent with the record as a whole.

Nor did the ALJ properly assume bias by virtue of a family relationship. (Tr. 23) ("Moreover, as close relatives of the claimant, their natural tendency to sympathize with the claimant and endorse his application for disability benefits cannot be ignored."). The Ninth Circuit has specifically explained "the fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony. To the contrary, testimony from lay witnesses who see the claimant everyday is of particular value, and such lay witnesses will often be family members." *Regennitter v. Commissioner of Soc. Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir. 1999) (internal quotation marks omitted).

It is apparent that the ALJ's reasoning is both invalid and insufficient under the circumstances, revealing the ALJs failure to properly consider the lay evidence of record. Hence, the Court should remand with directions to fully and properly consider the evidence.

3. <u>Applicable Legal Standards</u>

In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work. See <u>Dodrill v. Shalala</u>, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." See <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1467 (9th Cir. 1996). Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." <u>Dodrill</u>, 12 F.3d at 919. The ALJ may cite same reasons for rejecting plaintiff's statements to reject third-party statements where the statements are similar. See <u>Valentine v. Commissioner Soc. Sec. Admin.</u>, 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

/ / /

/ / /

/ / /

4.      Disposition

The court agrees with plaintiff and finds the ALJ's analysis of the lay witness evidence is inadequate. As stated above, the ALJ may only reject lay witness evidence for reasons germane to each witness. See Dodrill, 12 F.3d at 919. In providing a reason germane to the lay witness, the ALJ may cite the same reasons for rejecting the claimant's statements and testimony. See Valentine., 574 F.3d at 694. In this case, the ALJ essentially cited the same reasons to reject the lay witness evidence as he cited for rejecting plaintiff's statements and testimony as not credible – inconsistency with the medical evidence. See CAR 23. For the reasons discussed above, the court finds this analysis insufficient as to plaintiff's credibility because it is conclusory. For the same reason, the court finds the ALJ's analysis as to the lay witness evidence insufficient. Specifically, the ALJ has failed to cite reasons germane to each witness by relying on the same flawed rationale for rejecting the credibility of plaintiff's own statements. The matter should be remanded for further consideration of the lay witness statements.

**D.     Vocational Finding**

Plaintiff argues:

> At the fifth step of the sequential evaluation process, the Commissioner bears the burden of establishing that there exists other work in significant numbers that a claimant can perform. *Beltran v. Astrue*, 676 F.3d 1203, 1205 (9th Cir. 2012). For this to be accomplished through the testimony of a VE, the hypothetical relied on must include all of the claimant's functional limitations, both physical and mental. *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995). If the hypothetical "does not reflect all the claimant's limitations, . . . [then] the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1990); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014). Here, as demonstrated above the ALJ's RFC determination is flawed on multiple levels. Therefore, the ALJ's hypothetical questioning cannot be deemed complete as it was based on an erroneous RFC finding. "Accordingly, the ALJ's reliance on the vocational expert's opinion that an individual with the aforementioned residual functional capacity could perform the [identified jobs] was error." *Ghanim*, 763 F.3d at 1166. The instant case must be remanded for reconsideration and the application of proper legal standards, followed if necessary by the posing of a complete hypothetical that incorporates all limitations.

/ / /

Given the errors discussed above with respect to the ALJ's findings at Step 4, the court cannot say the ALJ's residual functional capacity assessment is based on substantial evidence. For this reason, the court finds the current Step 5 vocational analysis, which relied on that functional capacity assessment, is also necessarily flawed.

## IV. CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Plaintiff's motion for summary judgment (Doc. 14) be granted;
2. Defendant's cross-motion for summary judgment (Doc. 19) be denied; and
3. The Commissioner's final decision be reversed and this matter be remanded for further proceedings consistent with these findings and recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: January 7, 2019

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE